1  David Borgen (SBN 99354) dborgen@gdblegal.com
   GOLDSTEIN, DEMCHAK, BALLER,
2  BORGEN & DARDARIAN
   300 Lakeside Drive, Suite 1000
3  Oakland, CA 94612
   Telephone: (510) 763-9800
4  Facsimile: (510) 835-1417

5  Burton Boltuch (SBN 70211) bboltuch@workplacelaw.biz
   LAW OFFICES OF BURTON F. BOLTUCH
6  The 555 City Center Building
   555 12th Street, Suite 1440
7  Oakland, CA 94607-4046
   Telephone: (510) 844-3415
8  Facsimile: (510) 444-3401

9  Attorneys for Plaintiff
   KENNETH SEAMAN
10

11 Kenneth D. Sulzer (SBN 120253) ksulzer@seyfarth.com
   Michael L. Gallion (SBN 189128) mgallion@seyfarth.com
   Lorraine H. O'Hara (SBN 170153) lohara@seyfarth.com
12 Eileen C. Zorc (SBN 233797) ezorc@seyfarth.com
   SEYFARTH SHAW LLP
13 2029 Century Park East #3300
   Los Angeles, CA 90067-3063
14 Telephone: (310) 277-7200
   Facsimile: (310) 201-5219
15

16 Attorneys for Defendants
   UNUM GROUP and UNUM LIFE INSURANCE
   COMPANY OF AMERICA
17

                    UNITED STATES DISTRICT COURT
18
                  NORTHERN DISTRICT OF CALIFORNIA
19
                     SAN FRANCISCO DIVISION
20

21 KENNETH SEAMAN, individually and on     )   Case No. CV 07-03260 MMC
   behalf of those similarly situated,     )
                                           )   **SUPPLEMENTAL BRIEFING IN**
22                                          )   **SUPPORT OF JOINT MOTION FOR**
                  Plaintiffs,              )   **APPROVAL OF SETTLEMENT**
                                           )   **AGREEMENT AND DISMISSAL OF**
23          v.                              )   **LAWSUIT; DECLARATION OF**
                                           )   **MICHAEL GALLION**
24 UNUM GROUP and UNUM LIFE               )
   INSURANCE COMPANY OF AMERICA,          )
25                                          )   Date: April 25, 2008
                  Defendants.              )   Time: 9:00 a.m.
26                                          )
                                           )   (Declaration of David Borgen filed
27 _____)   concurrently)

28

1       Pursuant to the Court's Order dated April 2, 2008, Plaintiff Kenneth Seaman ("Plaintiff")

2 and Defendants Unum Group and Unum Life Insurance Company of America ("Defendants")

3 (collectively the "Parties"), by and through the undersigned counsel, hereby file this

4 supplemental briefing in support of their joint motion for the Court's approval of their settlement

5 agreement in this matter and dismissal of this lawsuit.

6 **I.**     **THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS FAIR**

7     **AND REASONABLE**

8     **A.**     **Approval is Within the Sound Discretion of the Court**

9       It is well established that approval of a settlement between parties is left to the "sound

10 discretion" of the trial court, and approval is warranted "if the proposed settlement is

11 fundamentally fair, adequate, and reasonable." *In re Omnivision Technologies, Inc.*, 2008 WL

12 123936, *3 (N.D. Cal). See also *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454,

13 459 (9th Cir.) (approving settlement and affirming "the amount offered in settlement [to be] a

14 reasonable amount in light of the uncertainties of trial and difficulties in proving scienter").

15 While considering a number of factors (including "the strength of the plaintiffs' case; the risk,

16 expense, complexity, and likely duration of further litigation [and] … the amount offered in

17 settlement;" *In re Mego*, 213 F.3d at 458), "the court's inquiry is ultimately limited 'to the

18 extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

19 overreaching by, or collusion between, the negotiating parties." *In re Omnivision*, 2008 WL at

20 *3. In this case, not only is the settlement devoid of any hint of fraud or collusion, but all the

21 relevant factors weigh in favor of approval of the settlement reached between the Parties.

22     **B.**     **The Settlement Is Reasonable In Light of the Damages Sought by Plaintiff**

23       In the first instance, the amount of the settlement is reasonable in light of Plaintiff's

24 alleged damages. Plaintiff claims that he was misclassified as exempt and that he is owed

25 overtime, interest, meal period and penalties for the period of June 21, 2003 through May 31,

26 2007. Counsel for Plaintiff evaluate his alleged damages as follows: approximately $150,000 in

27 lost overtime under the FLSA and California state law; approximately $150,000 in lost vacation

28 pay under California state law; approximately $40,000 in meal period violations and penalties

1   under California state law; and approximately $200,000 in recoverable fees and costs.

2   (Declaration of David Borgen ("Borgen Decl."), ¶ 3, filed concurrently herewith.)  Ultimately, in

3   settlement negotiations, Plaintiff claimed that the total value of his claims was approximately

4   $500,000.  (Borgen Decl. ¶ 4.)

5        Defendants deny, as a threshold issue, that Plaintiff was misclassified.  Even if he were

6   entitled to overtime, Defendants also dispute that Plaintiff consistently worked in excess of forty

7   hours per week and/or eight hours per day.  Defendants also argue that Plaintiff's vacation pay

8   claim is subject to numerous legal defenses, including laches.  The settlement amount ultimately

9   agreed to by the Parties, which has been submitted under seal, is reasonable given the amount he

10  seeks, the parties' dispute regarding the amount of damages Plaintiff would be entitled to, and

11  the numerous legal and factual challenges faced by Plaintiff in establishing his entitlement to

12  damages pursuant to his claims.[1]

13       **C.     The Settlement Is Reasonable Given the Uncertainty Regarding Plaintiff's**

14            **Recovery**

15            1.    **Plaintiff's FLSA claim faces significant legal hurdles.**

16       For one thing, the settlement represents a fair and equitable resolution of this matter,

17  particularly given the complex legal issues involved in this case.  One of Plaintiff's principal

18  claims is for failure to pay overtime under the Fair Labor Standards Act ("FLSA") and California

19  law on the basis that Defendants allegedly misclassified Plaintiff as exempt.  The parties agree,

20  however, that prevailing on the misclassification issue, a prerequisite to Plaintiff's recovery of

21  damages for unpaid overtime, would prove a substantial obstacle for Plaintiff.

22       Under current FLSA regulations, an employee qualifies for the administrative exemption

23  if the following provisions are met: 1) the primary duty is the performance of office or non-

24  manual work directly related to the management or general business operations of the employer

25  ───────────────────

[1] A redacted version of the parties' Settlement Agreement is attached as Exhibit 1 to the
26  declaration of Michael Gallion, filed concurrently (an unredacted version has been lodged with
    the Court).  Defendants have filed separately a motion under Civil Local Rule 79-5(c) to file the
27  monetary amounts of the settlement under seal.  If the Court denies Defendants' motion to file
    the monetary amounts under seal, Defendants will file a copy of the settlement agreement in the
28  public record prior to the hearing on April 25, 2008.

SUPPLEMENTAL BRIEFING IN SUPPORT OF JOINT MOTION – CV 07-03260 MMC
LA1 6688724.1 / 24335-000023

1   or the employer's customers; and 2) the primary duty includes the exercise of discretion and

2   independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(2)-(3).

3        Recent Ninth Circuit case law focuses on the particular duties that the position involves

4   and whether they are the types of duties identified in the regulations.  *See In re Farmers*

5   *Insurance Exchange, Claims Representatives' Overtime Pay Litigation*, 481 F.3d 119 (9th Cir.

6   2007)(holding that claims adjusters were exempt).  The employee's "primary duty" must also

7   include "the exercise of discretion and independent judgment with respect to matters of

8   significance."  29 C.F.R. § 541.200(a)(2).   The regulations make clear that discretion and

9   independent judgment "may consist of recommendations for action rather than the actual taking

10  of action," and that "an employee's decisions may be subject to review" and still qualify under

11  this element.  29 C.F.R. § 541.207 (e)(1).

12                          2.     **Plaintiff's job duties.**

13       Plaintiff's position was that of a Field Representative (though he held various titles

14  during his years of employment).  Field Representatives investigate disability claims (including

15  document review and interviews with insurance claimants and others) and draft reports on their

16  investigation for use by Disability Benefits Specialists ("DBS") (Declaration of Michael Gallion

17  ("Gallion Decl."), ¶ 4.)   Field Representatives are located throughout the country, work

18  independently out of home offices, and perform their assignments under only very generalized

19  supervision.  Field Representatives do not have to obtain review or sign off on the reports before

20  submitting them to the DBS.  If Field Representatives suspect fraud, they can refer cases to the

21  Special Investigative Unit ("SIU") for further investigation.  In addition, if a Field

22  Representative reveals an aspect or fact that they believe needs further attention, he or she may

23  choose to follow up with the DBS by phone, forward the report to the DBS's supervisor, or

24  contact the Legal Department.  (*Id.*)  Field Representatives also participate in meetings of the

25  Field & Vendor Services Advisory Council ("FAC") to enable them to share best practices. The

26  role of the FAC includes gathering input from Field Representatives and providing managers

27  with appropriate recommendations to enhance efficiency and improve accuracies.  (*Id.*)  Given

28

SUPPLEMENTAL BRIEFING IN SUPPORT OF JOINT MOTION – CV 07-03260 MMC
LA1 6688724.1 / 24335-000023

1   these facts, Defendants' could argue that the Field Representatives are exempt administrative

2   workers who exercise discretion and independent judgment in completing their investigations.

3                    3.        **Applicable case law.**

4        The Parties are unaware of any case law directly on point involving the exempt

5   classification of field investigators employed by a disability insurance company. Case law

6   regarding investigators in other contexts has reached various conclusions, demonstrating the

7   risks inherent in prosecuting the claim. For example, in *Stout v. Smolar*, 2007 WL 2765519

8   (N.D. GA. Sept. 18, 2007), a private investigator sued his former employer, a law firm and its

9   owner, claiming he was misclassified as exempt under the FLSA. The court found that he was

10  properly classified as administratively exempt because he exercised independent discretion and

11  judgment in performing his job, and because his duties were directly related to the business

12  operations of his employer. In *Gusdonovich v. Business Information Co.*, 705 F. Supp. 262

13  (W.D. Pa. 1985), however, the court held that an insurance investigator, who was employed by a

14  corporation that investigated and collected information for insurance companies, businesses, and

15  individuals, was not exempt. *See also, In re Farmers Insurance Exchange, Claims*

16  *Representatives' Overtime Pay Litigation*, 481 F. 3d 1119 (9th Cir. 2007) (auto claims adjusters

17  determined to be exempt); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir. 1997)

18  (marketing representatives employed by an insurance company are exempt).

19       The Parties submit that the unsettled state of the law in this area, and the uncertainty

20  faced by Plaintiff in prevailing on an issue central to his case, justifies the settlement amount

21  reached by the Parties.

22                   4.        **The evidence presented.**

23       Moreover, in its investigation of the lawsuit, Defendants gathered considerable evidence

24  in support of its legal position. Out of a total of 52 potential class members (representing current

25  and former Field Representatives), Defendants interviewed 47 of them, and gathered (and

26  presented to Plaintiff's counsel) a total of 44 declarations. The declarations of these individuals

27  regarding their job duties supported Defendants' position that the job is properly classified as

28  exempt. (Gallion Decl. ¶ 5.) In addition, Defendants were able to compile expense and other

1    records to contest Plaintiff's assertion regarding the amount of overtime hours he worked, even if

2    he was able to establish that he was misclassified.  (Gallion Decl. ¶ 6.).

3         Finally, Defendants challenged Plaintiff's claim for vacation pay.  First, Defendants

4    argued that the statute of limitations for the claim is limited to four years.  *Sequeira v. Rincon-*

5    *Vitova Insectaries, Inc.*, 32 Cal. App. 4th 632 (1995); *but see Church v. Jamison*, 143 Cal. App.

6    4th 21568 (2006).  In addition, Plaintiff's vacation pay claim is based largely on his long-time

7    employment with an insurance company, Paul Revere, acquired by Defendants in April of 1998.

8    (Gallion Decl. ¶ 7.)  Plaintiff's employment was terminated at the time of this acquisition, and

9    Plaintiff was required to complete a new application process to become an employee of

10   Defendants.  Defendants would have argued that his claims were barred for the period of time

11   preceding his employment with Defendants.  (Gallion Decl. ¶ 7.)  Plaintiff's counsel was also

12   willing to compromise on their entitlement to attorneys fees (sub-lodestar recovery) in order to

13   facilitate this settlement.  (Borgen Decl. ¶ 5.).

14        All of these factors threatened to reduce or nullify Plaintiff's potential recovery, further

15   justifying the amount of the settlement, and demonstrating the fairness, adequacy, and

16   reasonableness of the Parties' agreement.  The Parties' Joint Motion should be granted.

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   /

26   //

27   //

28   //

-5-

## II.   <u>CONCLUSION</u>

The Parties respectfully request that the Court enter the proposed Order Granting Joint Motion to Approve Settlement Agreement and Dismiss Lawsuit.

DATED:  April ___, 2008                    Respectfully Submitted,

By ___/s Michael L. Gallion_____
            Michael L. Gallion
            Seyfarth Shaw LLP
Attorneys For Defendants UNUM GROUP and
UNUM LIFE INSURANCE COMPANY OF
AMERICA

DATED:  April ___, 2008                    By ___/s David Borgen_____
            David Borgen
GOLDSTEIN, DEMCHAK, BALLER, BORGEN &
DARDARIAN

            Burt Boltuch


LAW OFFICES OF BURTON F. BOLTUCH
Attorneys for Plaintiff, KENNETH SEAMAN

## DECLARATION OF MICHAEL GALLION

I, Michael Gallion, declare:

1.      I am a partner at Seyfarth Shaw LLP, attorneys for Defendants Unum Group and Unum Life Insurance Company of America in the above-captioned action.  I make these statements based on personal knowledge and would so testify if called as a witness at trial.

2.      This Declaration is submitted in support of the Parties' Joint Motion for Approval the Settlement in this matter, ("Motion").

3.      On June 21, 2007, Plaintiff filed this action against Defendants, alleging seven (7) causes of action, including six causes of action pursuant to California state law brought on behalf of Plaintiff only (including failure to pay overtime, provide wage statements, failure to provide meal and rest periods, failure to pay vested vacation pay, waiting time penalties, and unfair business practices), and a claim for alleged violations of FLSA, individually and on behalf of those similarly situated.  Plaintiff, an exempt insurance investigator formerly employed by Defendants, alleged that he was misclassified as exempt, and was entitled to overtime under the FLSA and state law, in addition to California Labor Code violations. Defendants denied (and deny) any wrongdoing under the FLSA, or any state statute, and denied that they owe Plaintiff any compensation or associated penalties.  Defendants also denied that the action was suitable for collective treatment.

4.      Plaintiff's position with Defendants was that of a Field Representative (though he held various titles during his years of employment).  Based on my investigation into the duties associated with that position (which included multiple interviews and the review of copious documents), I became aware of the following facts:  Field Representatives investigate disability claims (including document review and interviews with insurance claimants and others) and draft reports on their investigation for use by Disability Benefits Specialists ("DBS").  Field Representatives are located throughout the country, work independently out of home offices, and perform their assignments under only very generalized supervision.  Field Representatives do not have to obtain review or sign off on the reports before submitting them to the DBS.  If Field

1  Representatives suspect fraud, they can refer cases to the Special Investigative Unit ("SIU") for

2  further investigation.  In addition, if a Field Representative reveals an aspect or fact that they

3  believe needs further attention, he or she may choose to follow up with the DBS by phone,

4  forward the report to the DBS's supervisor, or contact the Legal Department.  Field

5  Representatives also participate in meetings of the Field & Vendor Services Advisory Council

6  ("FAC") to enable them to share best practices. The role of the FAC includes gathering input

7  from Field Representatives and providing managers with appropriate recommendations to

8  enhance efficiency and improve accuracies.

9       5.     The case was originally pled and, and initially prosecuted, as a collective action

10  on behalf of a relatively small class of 52 individuals, many of them long-time employees of

11  Defendants.  I, along with attorneys in my office, interviewed dozens of current and former

12  employees in the same job position as Plaintiff (investigator), who were putative class members

13  in the action.  We ultimately gathered 44 declarations from putative class members, whose

14  descriptions of their job duties were consistent with an exempt classification; indeed, some

15  declarants expressed their lack of interest and support for the lawsuit.  In addition, not a single

16  individual either opted in to the settlement or, to my knowledge, expressed any interest in it.

17  Thereafter, after extensive discovery and negotiations between the parties (including

18  considerable exchange of documents, including the declarations gathered by Defendants),

19  counsel for Plaintiffs agreed that the case was not appropriate to pursue as a class or collective

20  action.

21       6.     In investigating Plaintiff's claim of hours worked while employed by Defendants,

22  I was able to obtain from Defendants numerous documents that appeared to cast doubt on the

23  number of hours Plaintiff claimed to have worked.  During settlement negotiations with

24  Plaintiffs, attorneys from my office shared some of these documents with Plaintiffs' attorneys.

25       7.     In addition, in approximately April 1998, Plaintiff's employment with Defendants

26  briefly terminated due to an acquisition by Paul Revere, his prior employer.  I am informed and

27  believe that Plaintiff was required to undergo a new application process in order to become an

28  employee of Defendants.  I concluded that this "break in service" could potentially cut off

-2-

1    Plaintiffs' lost vacation pay claim accrued prior to the termination date, and I shared this

2    information with Plaintiffs' counsel.

3         8.    Following a series of meetings and teleconferences designed to resolve Plaintiff's

4    individual claims, the Parties reached a settlement in this matter.  As part of the settlement, the

5    parties expressly agreed that the settlement would be subject to a  confidentiality provision that

6    would include a liquidated damages provision of $10,000 per violation.

7         9.    Attached as Exhibit 1 is a copy of the Parties' signed Settlement Agreement, with

8    the monetary terms redacted and submitted separately under Defendants' Administration Motion.

9         I declare, under penalty of perjury, under the laws of the State of California and the

10   United States that the foregoing is true and correct.  Executed this 11th day of April, 2008 at Los

11   Angeles, California.

12

13                                        /s Michael Gallion
                                        Michael Gallion

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

Exhibit 1

# CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release ("Agreement") is made by and between Plaintiff Kenneth Seaman ("Plaintiff"), on the one hand, and Defendants Unum Group and Unum Life Insurance Company of America (collectively, "Defendants"), on the other hand. Plaintiff and Defendants are sometimes referenced collectively herein as "the Parties" or individually as the "Party".

**NOW, THEREFORE,** in consideration of the aforementioned promises, and other good and valuable consideration, the adequacy of which is acknowledged, the Parties agree as follows:

### 1.    The Lawsuit

On June 21, 2007, Plaintiff filed a Complaint against Defendants entitled *Kenneth Seaman, individually and on behalf of those similarly situated, Plaintiff, vs. Unum Group and Unum Life Insurance Company of America, Defendants*, in the United States District Court for the Northern District of California Case No. C07-03260-EMC, (the "Lawsuit"), asserting claims for (1) failure to pay overtime compensation in violation of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) failure to pay overtime compensation in violation of California Labor Code §§ 510, 1194 and California Wage Order No. 4; (3) failure to provide wage statements in violation of California Labor Code §§ 226, 1174, and 1174.5 and California Wage Order No. 4; (4) failure to provide meal and rest periods in violation of California Labor Code §§ 226.7 and 512 and California Wage Order No. 4; (5) failure to pay vested vacation time in violation of California Labor Code § 227.3; (6) waiting time penalties under California Labor Code §§ 202 and 203; and (7) unfair business practices in violation of California Business and Professions Code §§ 17200-17208. The Parties desire to settle, fully and finally, Plaintiff's individual disputes, including all individual claims in the Lawsuit, as well as Plaintiff's collective action allegations pursuant to the following terms of this Agreement.

### 2.    No Admission of Liability; Agreement Not Evidence

This Agreement shall not in any way be construed as an admission by any Party that the Party or any of the Releasees identified in Paragraph 6 below, acted wrongfully or failed to act lawfully with respect to the other Party or any other person, or that a Party has any rights whatsoever against the other or any of the Releasees identified in Paragraph 6 below. Each Party specifically denies any liability for any wrongful acts or omissions against the other Party or any other person, on the part of themselves, their employees and agents, past and present, and the Releasees identified in Paragraph 6 below. Neither this Agreement nor anything in it shall be admissible in any proceeding as evidence of any unlawful or wrongful conduct by any Party or any of the Releasees identified in Paragraph 6 below.

### 3.    Dismissal of Lawsuit With Prejudice

Plaintiff shall seek dismissal of the Lawsuit with prejudice against all Defendants herein, and take any and all steps necessary to effectuate the dismissal with prejudice of the Lawsuit, including, but not limited to, agreeing to the Court approving a motion for approval of the dismissal of the Lawsuit, including the collective action allegations. Specifically, Plaintiff

agrees he will direct his counsel to sign the Joint Motion for Approval of Settlement Agreement and Dismissal of Lawsuit ("Joint Motion"), attached hereto as Exhibit A.

    4.    **Pursuit of Released Claims**

Plaintiff represents that he does not have pending any lawsuit or complaint against Defendants other than the Lawsuit. Plaintiff agrees and promises, to the fullest extent permitted by law, never to file or prosecute a lawsuit or complaint based on the claims released by this Agreement.

    5.    **Consideration By Defendants**

In consideration for promises made by Plaintiff herein, contingent on Plaintiff's fulfillment of the conditions of this Agreement, and seven business days after the entry of an order by the Court granting the Joint Motion, Defendants agree to pay Plaintiff the gross sum of                    Plaintiff and Defendants agree that the gross sum constitutes good, valid, and sufficient consideration for this Agreement. Plaintiff acknowledges that he has been fully compensated for all wages, vacation pay, benefits, and other forms of compensation to which he is entitled by virtue of his employment by Defendants, and is not entitled to receive, and Defendants shall not be obligated to pay or provide to him, any other or additional wages, compensation, or benefits not expressly provided for in this Agreement. Plaintiff also acknowledges and agrees that the above-listed payments constitute the entire amount of money or other benefits that will be granted to Plaintiff in exchange for the understandings contained in this Agreement. This payment shall be referred to as the "Settlement Sum," and shall be paid in accordance with the following provisions:

    5.1    **Wages.** Defendants shall pay the amount of                    in a check made payable to Plaintiff. The Parties agree that this payment is for full and complete settlement of Plaintiff's claims for unpaid overtime compensation and other wages. The Parties further agree that this amount shall be subject to income tax and other legally required withholding, and will be reported by Defendants as income to Plaintiff on an IRS Form W-2.

    5.2    **Penalties and Interest.** Defendants shall pay the amount of                    in a check made payable to Plaintiff. The Parties agree that this payment is for full and complete settlement of Plaintiff's claims for penalties and interest. For this amount, Defendants will issue a Form 1099 to "Kenneth Seaman." The Parties further agree that this payment is not subject to withholding, and shall not be subject to withholding, provided that Plaintiff first provide Defendants with a properly completed Form W-9.

    5.3    **Attorneys' Fees.** Defendants shall pay the amount of                    in a check made payable jointly to GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN and to LAW OFFICES OF BURTON F. BOLTUCH. The Parties agree that this payment is for all attorneys' fees and costs incurred by Plaintiff. The Parties further agree that this payment is not subject to withholding, and shall not be subject to withholding, provided that Plaintiff's attorneys first provide Defendants with a properly completed Form W-9.

2

**5.4    Timing of Payments.** Defendants shall not be required to issue these checks for the Settlement Sum until after: (a) Plaintiff signs and does not revoke this Agreement as specified in Paragraphs 17 and 18 below; (b) the Court enters an order granting the Joint Motion and dismisses the Lawsuit in its entirety, including but not limited to, the collective action allegations; and (c) Defendants receive the completed W-9 forms (as referenced above). Provided this Agreement becomes final, binding, and approved by the Court, Defendants shall issue the checks for the Settlement Sum within seven (7) business days of receipt of a fully executed Agreement, the dismissal of the Lawsuit in its entirety with prejudice, and the completed W-9 forms, whichever is later.

**5.5    Tax Treatment.** Plaintiff understands and agrees that Defendants are not providing any tax or legal advice, and that they make no representations regarding tax obligations or consequences, if any, related to this Agreement. Plaintiff agrees that he shall be exclusively responsible for the payment of federal and state taxes that may be due as the result of the consideration paid under this Agreement. Plaintiff agrees to fully indemnify and hold harmless Defendants and any other Releasee (as set forth in Paragraph 6 below) from payment of taxes, interest or penalties that may be required by any governmental agency at any time as the result of payment of the consideration set forth herein.

6.    **Complete Release of All Claims, Known or Unknown**

    a.    As a material inducement for each Party to enter into this Agreement, and in consideration of the covenants undertaken herein by the Parties, each Party hereby covenants not to sue and fully releases and discharges the other Party. Plaintiff's release includes all of Defendants' affiliates, officers, directors, shareholders, agents, attorneys, representatives, whether current or former, and employees (all of which and whom are collectively referred to as "Employer Releasees"), and Defendants' release includes all of the Plaintiff's heirs, successors, assigns, agents, attorneys and representatives, whether former, current or future (all of which and whom are collectively referred to as "Plaintiff Releasees"), with respect to and from, any and all claims, demands, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which each Party now owns or holds, or has at anytime heretofore owned or held against the other Party's Releasees, or any of them, arising out of, grounded upon, or in any way connected with Plaintiff's employment relationship with Defendants, Plaintiff's retirement from that employment or any other transactions, occurrences, acts or omissions or any loss, damages or injury whatsoever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of the Party's Releasees, or any of them, committed or omitted prior the date of this Agreement ("Claim or Claims").

    b.    Plaintiff's release of any such Claim or Claims includes, but is not limited to, any action arising out of any foreign, federal, state or local constitution, statute, ordinance, regulation, or common law, including, but not limited to, any Claims contained in the Lawsuit; any Claims under Title VII of the Civil Rights Act of 1964; the Equal Pay Act; the Fair Labor Standards Act; the Americans With Disabilities Act; the Family and Medical Leave Act; the Employee Retirement Income Security Act; the Worker Adjustment and Retraining Notification

3

Act; the California Fair Employment and Housing Act; all provisions of the California Labor Code; all provisions of the California Government Code; the Orders of the California Industrial Welfare Commission regulating wages, hours and working conditions; any other foreign, federal, state or local laws prohibiting employment discrimination or otherwise regulating employment; any Claim or Claims for discrimination, failure to prevent discrimination, retaliation, failure to prevent retaliation, harassment, failure to prevent harassment, assault, battery, misrepresentation, fraud, deceit, invasion of privacy, breach of contract, breach of quasi-contract, breach of implied contract, accounting, wrongful or constructive discharge, breach of the covenant of good faith and fair dealing, libel, slander, negligent or intentional infliction of emotional distress, violation of public policy, negligent supervision, negligent retention, negligence, or interference with business opportunity or with contracts; and any Claim or Claims for vacation pay, severance pay, bonus or similar benefit, sick leave or holiday pay; provided, however, that this release shall not affect any rights Plaintiff has been granted pursuant to this Agreement. Plaintiff expressly understands that among the various rights and Claims being waived by him in this Agreement are those arising under the Age Discrimination in Employment Act ("ADEA"), as amended, and in that regard he specifically acknowledges that he has read and understood the provisions of Paragraphs 17 and 18 below before signing this Agreement. This release does not cover rights or Claims arising under the ADEA arising after Plaintiff signs this Agreement.

c.     Defendants release of any such Claim or Claims includes, but is not limited to, any action arising out of any foreign, federal, state or local constitution, statute, ordinance, regulation, or common law, including, but not limited to, any Claims contained in the Lawsuit; any Claims under Title VII of the Civil Rights Act of 1964; the Employee Retirement Income Security Act; the California Fair Employment and Housing Act; all provisions of the California Labor Code; all provisions of the California Government Code; the Orders of the California Industrial Welfare Commission regulating wages, hours and working conditions; any other foreign, federal, state or local laws prohibiting employment discrimination or otherwise regulating employment; any Claim or Claims for discrimination, failure to prevent discrimination, retaliation, failure to prevent retaliation, harassment, failure to prevent harassment, assault, battery, misrepresentation, fraud, deceit, invasion of privacy, breach of contract, breach of quasi-contract, breach of implied contract, accounting, wrongful or constructive discharge, breach of the covenant of good faith and fair dealing, libel, slander, negligent or intentional infliction of emotional distress, violation of public policy, negligent supervision, negligent retention, negligence, or interference with business opportunity or with contracts; and any Claim or Claims for reimbursement by Plaintiff of any wages, vacation pay, severance pay, bonus or similar benefit, sick leave or holiday pay.

d.     **Exclusions**

Excluded from this Agreement are any claims or rights that cannot be waived by law, including claims arising after Plaintiff's execution of this Agreement and Plaintiff's right to file a charge of discrimination with, or participate in an investigation conducted by, an administrative agency. Plaintiff is waiving, however, his right to any monetary recovery or other relief in connection with such a charge. Also excluded from this release are any claims for breach of this Agreement. Further, it is expressly understood and agreed that this Agreement does not include and expressly does not waive or impact Plaintiff's vested rights, if any, in the Unum Group Pension Plan or in the Unum Group 401(k) Retirement Plan, any other rights

4

Plaintiff may have under Unum Group's welfare benefit plans, or any vested rights Plaintiff may have under a stock option or long-term incentive plan, or any rights to deferred compensation. Such retirement plan, welfare plan, stock option, or deferred compensation rights survive unaffected by this release, subject to the laws and plan documents governing those plans.

### 7.    Unknown Claims

The Parties expressly waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code, and each Party does so understanding and acknowledging the significance and consequence of such specific *waiver* of Section 1542. Section 1542 of the California Civil Code states as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Thus, notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of each and all of the Employer Releasees and of the Plaintiff Releasees, each Party expressly acknowledges that this Agreement is intended to include in its effect, without limitation, all Claims that each Party does not know or suspect to exist in his/its favor at the time of execution hereof, and that this Agreement contemplates the extinguishment of such Claim or Claims.

### 8.    No Additional Attorneys' Fees or Costs

Plaintiff acknowledges and agrees that Defendants shall not be required to pay Plaintiff any additional attorneys' fees or costs of any kind incurred in connection with the Lawsuit or in connection with any representation of Plaintiff by Goldstein, Demchak, Baller, Borgen & Dardarian, Law Offices of Burton F. Boltuch, or any other attorney, in this matter or in any other matter or generally.

### 9.    Return of Defendants' Property

Plaintiff represents that he has previously delivered all documents, electronic files, and writings, including but not limited to, daytimers, booklets, memoranda, computer databases, and all of their contents, that Plaintiff generated or took into possession while employed by Defendants, or that Plaintiff thereafter received from Defendants. Plaintiff also represents that he has previously returned all of Defendants' property in his possession, including but not limited to, phones, pagers, electronic devices, security passes, keys, and documents regarding any of Defendants' insureds. Plaintiff hereby warrants that with the execution and delivery of this Agreement, Plaintiff has surrendered to Defendants, all documents and things described in this Paragraph.

### 10.    Confidentiality

Plaintiff specifically agrees that he will not at any time, in any manner, either directly or indirectly, communicate to any person, firm, association, financial analyst, representative of the

5

media, other insurance company or other corporation, or use for his own benefit or gain, any material information concerning any matters affecting or relating to the business of Defendants, including without limiting the generality of the foregoing, the names of any of their customers, products, financial records, claims practices, pending litigation or litigation strategies, reserves, services, research, data bases, trade secrets, computer software, business or marketing plan, the prices they obtain or have obtained or at which they sell or have sold their products; medical and other private information about people or companies with whom Defendants do business, including insureds, customers, employees, producers, and suppliers; and information that is provided to Defendants on condition that it is kept confidential, such as licensed computer software plans or any other information of, about, or concerning the business of Defendants, their manner of operation, or their plans, which would cast question or doubt on the strategic direction or overall business strategy of Defendants. This Paragraph does not apply to information that is required to be disclosed by the force of law or that is part of the public domain.

Plaintiff further warrants that he has not disclosed the financial terms of this Agreement, or any financial offer made by Defendants and the negotiations leading thereto, to anyone other than his attorneys, and further warrants that he has instructed his attorneys that they are not to mention this Agreement or its financial terms to anyone else and accepts responsibility under this Agreement for any such mention by them. Plaintiff agrees, on behalf of his representatives and attorneys, that he has kept and will keep completely confidential the amount of this settlement, and the terms and contents of this Agreement, and the negotiations leading thereto, and will not publicize or disclose the conditions, terms, or contents of this Agreement in any manner, whether in writing or orally, to any person (other than to his attorneys), directly or indirectly, or by or through any agent, attorney, or representative, except in one or more of the following circumstances:

(a)   Disclosure to the Court where necessary to obtain approval of the dismissal of the Lawsuit and Court approval of the Joint Motion, including the collective action allegations.

(b)   Disclosure only to Plaintiff's tax consultants, attorneys, accountants or other financial advisors who are reasonably consulted by Plaintiff regarding the tax consequences, if any, of his receipt of the Settlement Sum or as required by law or to Plaintiff's immediate family (collectively "representatives").

(c)   Where such disclosure is reasonably related to the enforcement of this Agreement.

Under no circumstances may Plaintiff or any of Plaintiff's representatives state or imply that he has received any financial payment from Defendants as part of this settlement, except as set forth above or unless compelled to do so by law. Without limitation, Plaintiff further agrees that neither he nor his representatives will issue any press releases or public statements regarding the substance of Plaintiff's claims or the settlement of those claims. Plaintiff and his representatives may only acknowledge, and then only in response to an inquiry not prompted by Plaintiff or his representatives, that the Parties have resolved their disagreement. Plaintiff further agrees to promptly notify counsel for Defendants in advance of any demand or compulsion by law to disclose the amount of this settlement, the terms or contents of this Agreement, or the

6

negotiations leading thereto, and further agrees to cooperate fully with Defendants if they decide to challenge the demand or legal compulsion requiring Plaintiff to disclose the terms of the Agreement or any part of the amount of the Settlement Sum. Plaintiff understands and agrees that pursuant to his paragraph, neither he nor any of representatives shall make any disclosure prohibited by this Agreement.

11.     **Non-Disparagement and Non-Assistance**

Plaintiff agrees not to make any statement, oral or written, publicly or in private, that is against Defendants' business or personal interests, that discloses confidential or proprietary information gained during his employment, or that impacts negatively on Defendants' business reputation or their reputation in the community. Nothing in this Paragraph will be construed to prevent Plaintiff from communicating with or responding to a request for information from a federal, state, administrative agency or court. Plaintiff further agrees not to discuss, or otherwise disclose to anyone, including, but not limited to, the press or media or any organization or individual associated with the press or media, the allegations of wrongdoing made against Defendants in the Lawsuit.

Plaintiff also agrees not to encourage or assist in any litigation, prospective or threatened litigation, or any claim or potential claim, against any of the Defendants or their successors, affiliates, or assigns. Such assistance includes, but is not limited to, communicating with or providing any information to any person or his or her counsel, regarding Plaintiff's employment with Defendants, Plaintiff's claims in this Lawsuit, or any other information regarding Defendants, except insofar as Plaintiff's testimony is required by law. Plaintiff agrees further not to testify in any matter in which any Defendants have an interest unless Plaintiff is under compulsory process or unless Plaintiff is asked to do so by Defendants. If Plaintiff is served with process concerning any matter in which Defendants have an interest, Plaintiff will immediately notify the undersigned counsel for Defendants.

The Parties agree that if the Plaintiff ever requires employment references from the Defendants, the request shall be to TALX Corporation, a third party vendor retained by Defendant, that will verify name, most recent hire date, termination date, total time with Unum, job title, rate of pay, and gross earnings. Internet Access for employment verification is www.theworknumber.com and the contact telephone number 1-800-367-5690.

12.     **Remedy for Breach**

If Plaintiff or any of his representatives breach any provision in Paragraphs 10 and 11 herein, then Defendants shall have, in addition to and without limiting any other remedy or right that they may have at law or in equity, the right to a temporary and permanent injunction restraining any such breach, without any bond or security being required. In any such proceeding Plaintiff waives any defense that Defendants have an adequate remedy at law or that the injury suffered as a consequence of such breach is not irreparable. Plaintiff further agrees that should he or any of his representatives make any disclosures or provide assistance in violation of Paragraphs 10 and 11, it may be difficult or impossible to specify or prove damages as a result of the breach of the confidentiality and non-disparagement provisions and therefore

7

agrees that he shall be liable for, in addition to the injunctive and other relief set forth above, TEN THOUSAND DOLLARS ($10,000) in liquidated damages for each such breach. The prevailing party in any proceeding pertaining to an alleged breach of Paragraphs 10 or 11 shall be entitled to recover reasonable attorneys' fees and costs.

13.    No Re-employment

In consideration of the promises made by Defendants in this Agreement, Plaintiff agrees not to seek or accept future employment from Defendants or any Releasee or any of their parents, successors, affiliates, subsidiaries or related entities, and that none of these entities has any obligation to employ or to continue to employ Plaintiff and may refuse to do so without any recourse. If Plaintiff does seek or obtain re-employment, then this Agreement shall constitute sufficient cause for refusal to hire or for the termination of any such employment.

14.    Work-Related Injury

Plaintiff certifies that he has not experienced a job related illness or injury for which he has not already filed a claim.

15.    Entire Agreement; No Representations

This Agreement sets forth the entire agreement between the Parties, and fully supersedes any and all prior agreements or understandings between the Parties pertaining to the subject matter hereof. This is an integrated document. Each Party represents and agrees that the Party has thoroughly discussed all aspects of this Agreement with the Party's attorneys; that the Party has carefully read and fully understands all of the provisions of this Agreement; that the Party is voluntarily entering into this Agreement; and that the Party has not relied in any way on any representations or statements of any of the other Party's Releasees not contained in this Agreement.

16.    Ownership of Claims

Plaintiff represents and agrees that he has not heretofore assigned or transferred, or purported to have assigned or transferred, to any person, any Claim or portion hereof or interest herein, and Plaintiff agrees to indemnify, defend and hold harmless each and all of the Releasees against any and all Claims based on, arising out of, or in connection with any such transfer or assignment, or purported transfer or assignment of any Claims or any portion hereof or interest herein.

17.    Consideration Period

Plaintiff acknowledges that he has been advised by Defendants that he is entitled to a period of at least twenty-one (21) days within which to consider this Agreement before signing it, if he wishes. Plaintiff expressly acknowledges that he has taken sufficient time to consider this Agreement before signing it.

8

18. **Revocation Period**

This Agreement will not become effective or binding on the Parties until seven (7) days after it is signed, during which time Plaintiff may revoke this Agreement if he wishes to do so. Any revocation must be in writing and directed to Michael L. Gallion, Seyfarth Shaw, LLP, 2029 Century Park East, Suite 3300, Los Angeles, California 90067, within seven (7) days after Plaintiff signs this Agreement.

19. **Successors**

This Agreement shall be binding upon Plaintiff, and his heirs, representatives, executors, administrators, successors and assigns, and shall inure to the benefit of each and all of the Releasees, and to their heirs, representatives, executors, administrators, successors and assigns.

20. **Enforcement**

Should any Party sue to enforce this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs. The Parties consent to the personal jurisdiction of the Courts of California (including the United States District Court for the Northern District of California) in any proceeding to enforce this Agreement and agree not to interpose any objection or defense based on lack of personal jurisdiction or improper venue in any such proceeding.

21. **Severability**

Should any part, term or provision of this Agreement, with the exception of the releases embodied in Paragraphs 4, 6, and 7, be declared or determined by any court or other tribunal of appropriate jurisdiction to be invalid or unenforceable, any such invalid or unenforceable part, term or provision shall be deemed stricken and severed from this Agreement and any and all of the other terms of this Agreement shall remain in full force and effect to the fullest extent permitted by law. The releases and acknowledgements embodied in Paragraphs 4, 6 and 7 are the essence of this Agreement and should any of these paragraphs be deemed invalid or unenforceable, this Agreement may be declared null and void and any consideration received under this Agreement shall be returned to Defendants.

22. **Cooperation In Future Proceedings**

Plaintiff agrees that he will cooperate fully and provide truthful information with Defendants in their defense of any administrative, judicial or other proceeding arising from any charge, complaint or other action that has been or may be filed; provided, however, that Defendants reimburse Plaintiff for all reasonable expenses and for Plaintiff's time related to said cooperation at the hourly rate of fifty dollars ($50.00).

23. **Counterpart Execution and Use of Photocopies**

This Agreement may be executed by signature of each of the Parties hereto, or their authorized representatives, on multiple copies of this Agreement, including copies transmitted by

9

facsimile machine, and upon being so executed by all Parties hereto, shall be effective as if all signatures appeared on the original of this Agreement.

24.   **Miscellaneous**

This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of said state. The language of all parts, of this Agreement shall, in all cases, be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

THE UNDERSIGNED FURTHER STATE THAT THEY HAVE HAD A REASONABLE TIME WITHIN WHICH TO CONSIDER THIS AGREEMENT BEFORE EXECUTING IT, THAT THEY CAREFULLY READ THE AGREEMENT, THAT THEY HAVE DISCUSSED THIS AGREEMENT WITH THEIR OWN LEGAL COUNSEL, THAT THEY KNOW AND UNDERSTAND ITS CONTENTS, INCLUDING, BUT NOT LIMITED TO, ITS BINDING EFFECT, AND THAT THEY ARE FREELY, VOLUNTARILY AND KNOWINGLY ENTERING INTO THIS AGREEMENT. PLAINTIFF ALSO EXPRESSLY ACKNOWLEDGES THAT DEFENDANTS HEREBY ADVISE HIM TO CONSULT WITH HIS COUNSEL PRIOR TO EXECUTING THIS AGREEMENT.

THIS AGREEMENT CONTAINS A GENERAL RELEASE OF CLAIMS. PLEASE READ CAREFULLY BEFORE SIGNING.

IN WITNESS WHEREOF, this Agreement has been executed by the Parties on the dates shown below.

Dated: March ____, 2008                    KENNETH SEAMAN

                                          By:_____

Dated: March 28, 2008                      UNUM GROUP

                                          By: _Glenn P. Felton_____

Dated: March 28, 2008                      UNUM LIFE INSURANCE COMPANY OF
                                          AMERICA

                                          By: _Glenn P. Felton_____


APPROVED AS TO FORM AND CONTENT:

10

LA1 6686438.3

facsimile machine, and upon being so executed by all Parties hereto, shall be effective as if all signatures appeared on the original of this Agreement.

24.    Miscellaneous

This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of said state. The language of all parts, of this Agreement shall, in all cases, be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

THE UNDERSIGNED FURTHER STATE THAT THEY HAVE HAD A REASONABLE TIME WITHIN WHICH TO CONSIDER THIS AGREEMENT BEFORE EXECUTING IT, THAT THEY CAREFULLY READ THE AGREEMENT, THAT THEY HAVE DISCUSSED THIS AGREEMENT WITH THEIR OWN LEGAL COUNSEL, THAT THEY KNOW AND UNDERSTAND ITS CONTENTS, INCLUDING, BUT NOT LIMITED TO, ITS BINDING EFFECT, AND THAT THEY ARE FREELY, VOLUNTARILY AND KNOWINGLY ENTERING INTO THIS AGREEMENT. PLAINTIFF ALSO EXPRESSLY ACKNOWLEDGES THAT DEFENDANTS HEREBY ADVISE HIM TO CONSULT WITH HIS COUNSEL PRIOR TO EXECUTING THIS AGREEMENT.

THIS AGREEMENT CONTAINS A GENERAL RELEASE OF CLAIMS.  PLEASE READ CAREFULLY BEFORE SIGNING.

IN WITNESS WHEREOF, this Agreement has been executed by the Parties on the dates shown below.

Dated: March 27, 2008                    KENNETH SEAMAN

                                         By: Kenneth Seaman

Dated: March ___, 2008                   UNUM GROUP

                                         By:_____

Dated: March ___, 2008                   UNUM LIFE INSURANCE COMPANY OF
                                         AMERICA

                                         By:_____

APPROVED AS TO FORM AND CONTENT:

                                    16

LA1 6686482

Dated: March 28, 2008

GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN

By: _____ (Jk)
    David Borgen
    Attorneys for Plaintiff KENNETH SEAMAN

Dated: March 28, 2008

LAW OFFICES OF BURTON F. BOLTUCH

By: _Burton F. Boltuch_ (Jk)
    Burton F. Boltuch
    Attorneys for Plaintiff KENNETH SEAMAN

11

Dated: March 28, 2008

SEYFARTH SHAW LLP

By: _Michael L. Gallion_
      Michael L. Gallion  (cz)
Attorneys for Defendants
UNUM GROUP and UNUM LIFE
INSURANCE COMPANY OF AMERICA

12